# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 2:17-mj-47
)
Email account of Alexander Shapiro: )
ashapirox@gmail.com )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
The premises of Google, Inc, 1600 Amphitheatre Parkway, Mountain View, California 94043, including any safes therein. See Attachment A.

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

Evidence of records of unlawful export activity.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 50 U.S.C. § 1701-1706 | International Emergency Economic Powers Act ("IEEPA") |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Timothy Saunders, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/7/2017

_____
*Judge's signature*

City and state: Columbus, Ohio
N. M. King, USMJ Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT, EASTERN DIVISION OF OHIO

In the Matter of the Search of an Internet Service Provider:

Email Accounts:
ashapiro@titanium-brazing.com
ashapirox@gmail.com

Hosting Services, Inc
517 West 100 North, Suite 225
Providence, Utah 84332

Google, Inc
1600 Amphitheatre Parkway
Mountain View, California 94043

| UNDER SEAL

| No.

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT OF AN INTERNET SERVICE PROVIDER

I, Timothy S. Saunders, a Special Agent Federal Bureau of Investigation, being duly sworn, hereby depose and state:

### INTRODUCTION AND SUMMARY OF PROBABLE CAUSE

1. As set forth in detail below, an investigation into the illegal export activities of goods from the United States, specifically from a U.S. company Titanium Brazing Inc, owned by Alexander Efimovich Shapiro, and Noavaran Pooyamoj (NP), a company located in Iran which has been sanctioned by the European Union (EU) and is known to be involved in the procurement of controlled materials which have a direct application in the manufacturing of centrifuges for Iran's uranium enrichment program. Specifically, from at least October 2013 until the present time in an ongoing crime, the facts herein

1

establish probable cause to believe that Titanium Brazing Inc, Alexander Shapiro, and Noavaran Pooyamoj conspired with each other to export dual-use equipment from the United States to Iran in violation of the United States law, namely, the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701-1706, and the Iranian Transactions and Sanctions Regulations ("ITSR"), 31 C.F.R, §§ 560.203 and 560.204 and, conspiracy in violation of 18 U.S.C. § 371.

## AGENT BACKGROUND

2. I have been employed as a Special Agent of the Federal Bureau of Investigation (FBI) since October 2008, and I am currently assigned to the Cincinnati Division, Columbus Resident Agency, as a member of the Counterintelligence Squad. I am responsible for investigating, among other crimes, the illegal transfer from the United States of commodities, technology, and services that are regulated by the United States Departments of State and Commerce (hereinafter "DOS" and "DOC") and by the Department of the Treasury, Office of Foreign Assets Control (OFAC). I have received both formal and informal training in the detection and investigation of said offenses. As a result of my training and experience, I am familiar with the federal laws relating to the unlawful exportation of goods and technology. I have participated in various investigations, including those with a foreign counterintelligence nexus. As a federal agent, I am authorized to investigate violations of laws of the United States.

## PURPOSE OF THE AFFIDAVIT

3. This affidavit is intended to establish probable cause for the requested search warrants of internet services providers HOSTING SERVICES INC and GOOGLE INC in Utah and California, respectively, and does not set forth all of my knowledge about this matter.

2

4. I have personally participated in the investigation described herein. I have also received information from other federal law enforcement officials relating to this investigation. I have reviewed relevant documents and reports of witness interviews during the course of this investigation. The statements contained in this affidavit are based on my own observations, document reviews, and reliable information provided to me by other law enforcement officials.

5. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of IEEPA and the ITSR and an ongoing criminal conspiracy to commit these offenses have been committed by Titanium Brazing, NP, and others. There is also probable cause to believe that fruits, evidence, and instrumentalities of these crimes in the form of electronic communications located as described in Attachment A at the internet service providers HOSTING SERVICES INC, 517 West 100 North, Suite 225, Providence, Utah 84332; and GOOGLE INC, 1600 Amphitheatre Parkway, Mountain View, California 94043.

## STATUTES AND REGULATIONS

6. Since March 2016 to the present time, the Federal Bureau of Investigation (FBI), has been investigating violations of the International Emergency Economic Powers Act (IEEPA) Title 50 U.SC. Section 1701 et seq. and the Iranian Transaction and Sanctions Regulations (ITSR), 31 C.F.R. parts 560.203 and 560.204. The investigation has determined that there is probable cause to believe that violations of U.S. export laws have occurred through the export of U.S. origin manufactured goods to Iran, an embargoed country under IEEPA and the Department of the Treasury's Office of Foreign Asset Control (OFAC), Iranian Transactions and Sanctions Regulations (ITSR).

7. IEEPA, codified at Title 50, United States Code, Sections 1701-1706, confers upon the President authority to deal with unusual and extraordinary threats to the national security and foreign policy of the United States. Section 1705 provides, in part, that "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this title." 50 U.S.C. § 1705(a).

8. Beginning with Executive Order No. 12170, issued on November 14, 1979, the President found that "the situation in Iran constitutes an unusual and extraordinary threat to the national security, foreign policy and economy of the United States and declare[d] a national emergency to deal with that threat." On May 6, 1995, the President issued Executive Order No. 12959, adopting and continuing Executive Order No. 12170 (collectively, the "Executive Orders"), and prohibiting, among other things, the exportation, re-exportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a United States person. The Executive Orders authorized the United States Secretary of the Treasury to promulgate rules and regulations necessary to carry out the Executive Orders. Pursuant to this authority, the Secretary of the Treasury promulgated the Iranian Transactions Regulations (renamed in 2013, the Iranian Transactions and Sanctions Regulations, the "ITSR") implementing the sanctions imposed by the Executive Orders.

9. The ITSR, Title 31, Code of Federal Regulations, Section 560.204, prohibits, among other things, the exportation, re-exportation, sale, or supply, directly or indirectly, from the United States, or by a United States Person, of goods, technology, or services to Iran or the Government of Iran, including the exportation, re-exportation, sale or

4

supply of goods, technology or services to a third country knowing that such goods, technology or services are intended for Iran or the Government of Iran, without a license from the United States Department of the Treasury, Office of Foreign Assets Control ("OFAC"). OFAC administers and enforces economic and trade sanctions based on U.S. foreign policy and national security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy or economy of the United States.

10. The ITSR also prohibits transactions that evade or avoid, have the purpose of evading or avoiding, cause a violation of, or attempt to violate the ITSR. 31 C.F.R. § 560.203.

11. There are several very limited exceptions, such as donations to relieve human suffering, to the Iranian Transactions and Sanctions Regulations not relevant to this criminal complaint application.

12. In general, except for items exclusively controlled for export and re-export by the Department of State, all items made, wholly or in part, in the United States, wherever located, are subject to the Export Administration Regulations, Title 15, Code of Federal Regulations, Parts 730-774. The Department of Commerce promulgates the Export Administration Regulations and maintains the Commodity Control List, which specifies the goods and technologies that require export licenses prior to shipment outside the United States.

13. The Export Administration Regulations (EAR), 15 C.F.R. §§ 730-774, sets restrictions on the export of goods outside of the United States and applies to goods, technology, and software that are "dual use" in nature, meaning that they have commercial and military and/or weapons proliferation (nuclear, chemical or biological) applications.

5

Among other things, the EAR prohibits the export of certain goods and commodities to specific countries, absent permission from the DOC issued in the form of an export license. Specifically, the DOC has devised the "Commerce Control List" (CCL), see 15 C.F.R. § 774, which consists of general categories of goods that are controlled for export and are so designated by an "Export Control Classification Number" (ECCN). The DOC also has devised the "Commerce Country Chart," see 15 C.F.R. § 738. In the event that a commodity or good is on the CCL, then an exporter must consult the Commerce Country Chart to determine whether an export license from the DOC is required to export the CCL item to a given country. As noted and detailed in paragraph 9, all shipments from the United States to Iran requires a license.

14. Additionally, section 764.2(a) of the EAR prohibits any person from engaging in any conduct contrary to the EAR or from refraining from engaging in activity required by the EAR. Section 764.2(b) of the EAR prohibits any person from causing, aiding, abetting, counseling, commanding, inducing, procuring, or permitting the doing of any act prohibited by the EAR, or the omission of any act required by the EAR. Section 764.2(h) of the EAR prohibits any person from engaging in any transaction or taking any action with the intent to evade the provisions of the EAR.

15. Under IEEPA, it is a crime to willfully violate any regulation promulgated thereunder, including the EAR. See 50 U.S.C. § 1705. Under Title 18, United States Code, Section 371, it is a crime to conspire to violate a law of the United States

16. Based on my training and experience, I understand that although there has been some limited relief from U.S. sanctions due to the Joint Comprehensive Plan of Action ("JCPOA"), none of that relief has affected the prohibitions at issue here. Since Implementation Day occurred on January 16, 2016, the ITSR was only minimally

6

affected. It is possible to obtain, on a case-by-case basis, licenses for the export to Iran of certain items including commercial civil aviation aircraft, parts, and services for civilian end-users. Foreign entities that are owned or controlled by a U.S. person, which includes U.S. corporations, are permitted, via a general license, to engage in certain transactions involving Iran that do not involve U.S. goods, U.S. services, or U.S. persons. Also, certain Iranian entities and individuals have been removed from OFAC's list of Specially Designated Nationals, as noted above. Last, the U.S. has suspended certain so-called "secondary" economic and financial sanctions directed toward non-U.S. persons who were doing business with certain sectors of the Iranian economy. The JCPOA has no impact on the allegations set forth in this affidavit.

## Relevant Individuals and Entities

17. Alexander Efimovich Shapiro (SHAPIRO) is the registered owner of Titanium Brazing Inc. (TITANIUM) of Columbus, Ohio. TITANIUM is a United States Corporation for Profit according to State of Ohio business records. Additionally, these records indicate that, in March 2005, SHAPIRO registered TITANIUM at 1588 Longeaton Drive, Columbus, Ohio. TITANIUM's website indicates that the company manufactures titanium based, zirconium based powdered and aluminum magnesium based foil and wire brazing metals for joining titanium allows, titanium to aluminum, copper or steel, titanium aluminides, refractory metals, graphite and carbon-carbon composites in various applications such as heat exchangers, honeycomb structures, compressor vanes, tubing, electronics and medical devices. Furthermore, TITANIUM's website provides the following contact information: 5977 Coventry Cross Lane, Hilliard, Ohio; 18678 Cranwood Parkway, Cleveland, Ohio, telephone: 614-886-7519; fax 614-540-7493 and email ashapiro@titanium-brazing.com. According to the Franklin County (Ohio) Auditor website, the dwelling located at 5977 Coventry Cross

7

Lane, Hilliard, Ohio is owned by Alexander SHAPIRO, and the dwelling located at 1588 Longeaton Drive, Columbus, Ohio is owned by Wilmer and Patricia Hosket (HOSKET), as of August 2016. Your Affiant is aware that some pieces of equipment manufactured via the titanium brazing process can be considered "dual-use" in nature since the equipment can be used for both military, WMD, and commercial applications.

18. The FBI investigation of SHAPIRO relates to the illegal export of U.S. goods to Iran, an embargoed country per the ITSR. As detailed below, the FBI, through its investigation and the facts which have been identified, believes that this activity is being conducted using electronic devices and email to send and receive information from a known Iranian proliferation agent regarding the procurement of U.S. goods for end use in Iran.

19. Noavaran Pooyamoj (NP), also known as Pooya Wave Company and Noavaran Pouya Mowj Company, Inc, located at No 15, Eighth Street, Pakistan Avenue, Shahid Beheshti avenue, Tehran, Iran, was sanctioned in May 2011 under Council Implementing Regulation (EU) NO 503/2011 Implementing Regulation (EU) No 961/2010 on Restrictive Measures Against Iran due to their involvement with procuring controlled materials that have a direct application in the manufacturing of centrifuges for Iran's uranium enrichment program.

20. Star Tech Aviation Co Ltd (STA) is a Hong Kong based company that specializes in supplying spare parts and equipment for airlines and maintenance facilities in mainland China. The email address with which Shapiro has been in contact, nandy@startechaviation.com, in particular has been identified to be used by Nandy XIE who is the purchasing manager at STA. According to STA's website their Hong Kong office is located at Room 1605-6 16/F, Two Grand Tower, 625 Nathan Road, MongKog, Kowloon, Hong Kong. STA's Shenzhen office is located at Room 23A18,

8

building #4, Hongfalingyu Garden, Chuangye Rd, No 5 Bao'an District, Shenshen 518101.

## Summary of Illegal Activities

21. Your affiant believes that the conspiracy to export items from the United States to Iran has worked as follows: NP will place an order with SHAPIRO for U.S.-origin metals and alloys which have been brazed with titanium metal. SHAPIRO, using business TITANIUM BRAZING INC, then acquired the ordered equipment and shipped the equipment to a middleman. The middleman then shipped the equipment to NP or other end-users in Iran. Your Affiant believes that the current conspiracy between SHAPIRO and NP involves the use of a middleman which is located in Hong Kong.

22. Your Affiant has learned through investigations in other Districts that, in October 2013, Alexander SHAPIRO's work email address ashapiro@titanium-brazing.com was one of 50 email addresses which received an email from an individual who is known to be employed by NP. In the email, the sender of the email, who utilized email address sedaghati@novaranco.com, thanks the recipients for their assistance in breaking unfair nuclear and missile sanctions against Iran. The sender proceeds to thank the recipients for supporting NP's business and helping NP to continue its successful trade despite many sanctions and trading restrictions on NP and Iran.

23. In the same email, the sender reveals to the recipients that NP does business on three fronts: supplying to the Iranian nuclear program, supplying to the Iranian military development program, and supplying to Iranian missile/aerospace industries. The sender also says that in order to acquire the commodities that Iran needs for these programs, NP operates under a variety of front companies which are located in Hong Kong, China, and Dubai, United Arab Emirates (UAE). As noted below, your Affiant believes that one middleman in this scheme is STAR TECH AVIATION CO, LTD, which

has operating ties to Hong Kong and China and is linked to shipments to Iran as described below.

24. Based on my training and experience, I know that individuals and companies, in order to conceal unlawful export activity, such as violations of the ITSR, will first ship items from the United States to another country before re-shipping the items to Iran. Hong Kong is a common transshipment for items intended for Iran.

**Facts Establishing Probable Cause**

### Email Target 1- ashapiro@titanium-brazing.com

25. As previously detailed in this affidavit, your Affiant believes that NP uses an extensive network of front companies and procurement agents to acquire U.S.-origin dual-use items for end users who work in Iran's military, nuclear, and aerospace programs. All commodities of this type require the issuance of a valid export license from the U.S. Office of Foreign Assets Control (OFAC) to any person or company which wants to send the goods to Iran.

26. A whois database lookup of www.titanium-brazing.com and the email address ashapiro@titanium-brazing.com was performed in order to identify the website domain and mail server. The database indicated that the website domain was hosted by GKG.NET, Bryan, Texas and was registered to Alexander Shapiro. Further investigation revealed that GKG.NET only hosted the website and that the email address domain titanium-brazing.com was hosted by HOSTING SERVICES, INC, which is part of the parent company UK2 GROUP. HOSTING SERVICES, INC is an internet services provider located at 517 West 100 North, Suite 225, Providence, Utah 84332.

27. On September 7, 2016, US Magistrate Judge Norah McCann King signed a court order for the installation of an email Pen Register/Trap and Trace for Shapiro's business email, ashapiro@titanium-brazing.com. The monitor ran from September 22, 2016 to November 6, 2016, and was extended, pursuant to a court order signed by U.S. Magistrate Judge Norah McCann King, from November 6, 2016, until January 6, 2017.

28. From September 22, 2016 to January 6, 2017, ashapiro@titanium-brazing.com communicated with nandy@startechaviation.com a total of 10 times. Open source Internet research shows that STAR TECH AVIATION CO, LTD (STA) is a Hong Kong-based company. According to STA's website, the company specializes in supplying spare parts and equipment for airlines and maintenance facilities in mainland China. The email address nandy@startechaviation.com has been identified as belonging to Nandy XIE, who is the Purchasing Manager at STA. Recent contact between SHAPIRO and STA, revealed through the Pen Register/Trap & Trace, indicates that a pattern of discussions of orders and shipments is continuing and ongoing, and your Affiant seeks to obtain through this search warrant, the content of these discussions.

29. A whois database search of startechaviation.com was performed to identify records pertaining to this domain. The database indicated that the domain is registered to Shenzhen Cheng Thai Airways Material Equipment Co., Ltd, Shenzheng, China.

30. FBI investigation into STA, and its parent company STAR TECH HOLDINGS LIMITED (STHL), reveals that, in April 2016, an identified U.S. business received a price quote request from a representative of STHL for a large quantity of U.S.-manufactured dual-use plugs. Research conducted online by your Affiant indicates that the identified plugs had a variety of dual-use aerospace and missile applications, including military aircraft engines. Later, during communications about the quote, the STHL representative indicated that the end user of the plugs was in Iran. According to their

website, STHL owns Shenzhen Chengda Aviation Parts Ltd, 8078 Dongbian Business Plaza, Minzhi Street, Shenzhen, China.

31. Further investigation reveals that a Shippers Export Declaration (SED) form was filed in the U.S. Government's Automated Export System (AES) on February 23, 2016 by SHAPIRO. The Electronic Export Information (EEI) which was filed in AES indicated the following description for commodities being shipped: "Titanium and articles thereof, Other wrought titanium". According to the Foreign Trade Statistics Regulations (FTSR), 15 CFR Part 30, exporters are required to provide detailed and accurate information in the description section of the SED. Your Affiant, through knowledge and training of investigations of this kind, finds it odd that such a bland description of the items being exported is shown; and is aware that exporters who wish to hide the true nature of the items being sent will often times provide only very basic information in this section. The value of the shipment was listed as $22,340.00 USD. The date of exportation was shown as February 26, 2016 via FEDEX. The ultimate consignee was listed as the following: STAR TECH AVIATION LTD, Room 1605-6, 16/F, Two Grand Tower, 625 Nathan Road, Mongkok, Hong Kong.

32. Based on the facts that a known proliferation agent for NP revealed that NP has established front companies based in Hong Kong for the procurement of U.S.-origin goods, and given that STA is known to have attempted to acquire U.S.-origin goods for eventual transshipment to Iran as recently as April 2016, your Affiant believes that STA is a procurement channel for NP in Iran. As detailed previously in this affidavit, as recently as December 2016, Alexander SHAPIRO had been in email contact with a representative from STA. Your Affiant further believes that SHAPIRO is actively manufacturing, procuring, and shipping export-controlled U.S. goods to STA, which is then forwarding these commodities to NP in Iran.

### Email Target 2- ashapirox@gmail.com

33. During the course of the authorized Pen Register/Trap & Trace, Shapiro sent 429 emails from ashapiro@titanium-brazing.com including 112 emails to ashapirox@gmail.com. In addition, from September 22, 2016 until January 6, 2017, ashapiro@titanium-brazing.com received 492 emails including 18 emails from ashapirox@gmail.com.

34. On November 8, 2016, FBI Special Agent Christopher R. Potts received results for a Grand Jury Subpoena which was issued to Google Inc (GOOGLE) for email subscriber records pertaining to email accounts utilized by Alexander Shapiro. A review of the results indicate the following information: Alexander E. Shapiro is the subscriber for email address ashapirox@gmail.com, recovery email address ashapirox@yahoo.com, date created October 2, 2005, terms of service IP 75.185.33.162, registration telephone 614-440-7519, and Google Account ID 351484299020. Based on my training and experience from conducting investigations of this type, I know that individuals may utilize multiple email addresses in order to conduct their business and attempt to hide the content of certain transactions.

### CONCLUSION

35. Based on the facts outlined in this affidavit, your affiant states that there is probable cause to believe that SHAPIRO utilizes the target email addresses ashapiro@titanium-brazing.com and ashapirox@gmail.com to facilitate the export of U.S.-origin commodities to Iran, contrary to U.S. law. In particular, the investigation has revealed that Iran-based company NOAVARAN POOYAMOJ (NP), which is known to seek out and acquire U.S.-origin goods for use in Iran's nuclear and military programs, operates

13

front companies located across the globe, including ones located in Hong Kong. In 2013, Alexander SHAPIRO received an email from an employee at NP which thanked all recipients, including SHAPIRO, for his assistance in helping NP to acquire U.S.-origin goods despite ongoing trade sanctions which have been imposed on Iran. While not specifically mentioned in the email from NP, investigation has revealed that Hong Kong-based company STAR TECH AVIATION LTD (STA) has attempted to purchase U.S.-origin goods for transshipment to Iran. In February 2016, according to Electronic Export Information (EEI) filed in the Automated Export System (AES) by SHAPIRO, SHAPIRO had sent "titanium articles" from the U.S. to STA, and listed STA as the Ultimate Consignee. Your Affiant believes that SHAPIRO may have misstated the ultimate destination of this equipment, and caused to be provided false information to the U.S. Government's Automated Export System. As of December 2016, SHAPIRO had continued contact with representatives from STA.

36. The evidence stated herein establishes probable cause to believe that SHAPIRO has violated the United States trade embargo with Iran.

37. There is further probable cause to believe that evidence, fruits, and instrumentalities of this crime are located on the email servers located within the premises at HOSTING SERVICES INC and GOOGLE INC. The writer, through training and experience, knows that a company's mail server can store and maintain email transactional records between entities who utilize that server to send and receive email. The mail server is hosted by an internet service provider (ISP).

38. Whois database searches and your Affiant's contact with an employee of HOSTING SERVICES INC reveals that, as of November 2016, SHAPIRO utilizes an ISP called

14

HOSTING SERVICES INC for email services for ashapiro@titanium-brazing.com. According to the company's website, HOSTING SERVICES INC is a full-service network solutions provider for businesses across the world, with a full range of IT solutions, such as high-performance cloud servers, cloud databases, and email hosting. HOSTING SERVICES INC's corporate office address is 517 West 100 North, Suite 225, Providence, Utah 84332. Based on the information above, your Affiant believes that email records for ashapiro@titanium-brazing.com can be found on a mail server which is located at HOSTING SERVICES INC.

39. The results of a grand jury subpoena which was served on GOOGLE INC shows that Alexander SHAPIRO is the registered subscriber for the email address ashapirox@gmail.com. Gmail is an email service which is provided by GOOGLE INC. According to the company's website, GOOGLE INC is an American multinational technology company specializing in Internet-related services and products that include online advertising technologies, search, cloud computing, software, and hardware. GOOGLE INC's corporate office address is 1600 Amphitheatre Parkway, Mountain View, California 94043. Based on the information above, your Affiant believes that email records for ashapirox@gmail.com can be found on a mail server which is located at GOOGLE INC.

40. In short, based on the investigation to date and my training and experience, I believe there is probable cause that evidence of violations of Title 50 USC §1705, 31 CFR §§ 560.203 and 560.201; will be found on the email servers located at HOSTING SERVICES INC and GOOGLE INC, as detailed above.

41. At all times relevant to this investigation, the ITSR, IEEPA, and the EAR were in effect and that permission, in the form of a validated export license issued by the U.S. Government, was required to legally export the equipment described above to Iran.

42. At no time did any party associated with these transactions, apply for, receive, or possess a license or authorization from OFAC or BIS to export goods, technology, or services, of any description, to Iran.

43. Wherefore, I request that the Court issue the proposed search warrant for the target account, as the records are necessary to collect and preserve evidence and/or to identify conspirators. Because the warrant will be issued to an electronic service provider, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

44. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

_____
Timothy S. Saunders
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 7th day of February 2017.

_____
United States Magistrate Judge Norah McCann King
United States District Court
Southern District of Ohio

17

## ATTACHMENT A

### ITEMS TO BE SEIZED

1. All files subscribers are storing on the system that identify the account(s) owners, accomplices, and victim information.
2. All addresses found in the owner's address book and buddy list.
3. All opened and unopened email messages (to include complete header information) sent to and from the accounts(s) or any alias accounts.
4. All available IP history.
5. All information documenting the activity of the member.
6. All registration information.
7. All data preserved because of the preservation request.